UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ARTHUR BOLTON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:24 CV 1375 JMB |
| ) | |
| MICHELE BUCKNER, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner Arthur Bolton's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the petition is **DENIED**.

**I.   Procedural Background**

Petitioner is held by the Missouri Department of Corrections pursuant to the judgment and sentence of the Circuit Court of the City of St. Louis, Missouri. In 2016, a jury convicted him of first-degree murder and armed criminal action and he was sentenced to concurrent life sentences. On March 27, 2018, the Missouri Court of Appeals affirmed his conviction and sentence (Doc. 11-5). Following evidentiary hearings (Docs. 11-7 to 11-9), Petitioner's motion for postconviction relief pursuant to Missouri Supreme Court Rule 29.15 was denied by the trial court (Doc.11-6). On March 12, 2024, the Missouri Court of Appeals affirmed the denial of postconviction relief (Doc. 11-12). Petitioner timely filed his § 2254 petition on October 15, 2024 (Doc. 1). He asserts five grounds for relief related to evidentiary rulings and ineffective assistance of trial counsel.

Respondent filed a response in opposition (Doc. 11) to which Petitioner has not replied, rendering this matter fully briefed.

II.     **Factual Background**

Petitioner does not challenge the factual findings of the state courts and they are presumed to be correct.  28 U.S.C. § 2254(e)(1).

The evidence at trial revealed that Petitioner shot and killed Kenny Burgett on January 15, 2015 after discovering that his ex-girlfriend, Antonia Moore, was with Mr. Burgett at his house. A jury found Petitioner guilty on November 30, 2016, 22 months after his arrest.

III.    **Legal Standards**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d), allows for habeas relief in Federal court only if the state court's determination:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).  A state court's decision is "contrary to" clearly established law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result."  Brown v. Payton, 544 U.S. 133, 141 (2005).  "The state court need not cite or even be aware of the governing Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'"  Brown v. Luebbers, 371 F.3d 458, 461 (8th Cir. 2004) (citing Early v. Packer, 537 U.S. 3, 8 (2002)).  "In the 'contrary to' analysis of the state court's decision, [the federal court's] focus is on the result and any reasoning that the court may have given; the absence of reasoning is not a barrier to a denial of relief."  Id.

Page **2** of **14**

A decision involves an "unreasonable application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner," Brown, 544 U.S. at 141; Williams v. Taylor, 529 U.S. 362, 405 (2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 406. "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (quoting Williams, 529 U.S. at 410–11).

When reviewing whether a state court decision involves an "unreasonable determination of the facts," state court findings of "basic, primary, or historical facts" are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. Collier v. Norris, 485 F.3d 415, 423 (8th Cir. 2007) (citations omitted); 28 U.S.C. § 2254(e)(1). Erroneous findings of fact by the state courts do not ensure the grant of habeas relief. Rather, the determination of these facts must be unreasonable in light of the evidence of record. Id.

To prevail on his ineffective assistance of counsel claims, Petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 688 (1984). With respect to the first Strickland prong, there is a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance. Id. at 689. Thus, "counsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," and the "burden to show that counsel's performance was deficient rests squarely on the defendant." Burt v. Titlow, 571 U.S. 12, 22–23 (2013) (quotation marks and citation omitted). Courts "must indulge a strong presumption that counsel's conduct

falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689; see also Abernathy v. Hobbs, 748 F.3d 813, 816 (8th Cir. 2014) (reviewing court must refrain "from engaging in hindsight or second-guessing of trial counsel's strategic decisions.") (citation omitted)).

To establish the "prejudice" prong, the movant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "Merely showing a conceivable effect is not enough; a reasonable probability is one sufficient to undermine confidence in the outcome." Paulson v. Newton Corr. Facility, 773 F.3d 901, 904 (8th Cir. 2014) (citation omitted). Although Strickland requires a showing of both deficient performance and prejudice, a "finding that no prejudice exists is sufficient to conclude that counsel was not constitutionally ineffective — [courts] need not first make a determination regarding deficiency." Holder v. United States, 721 F.3d 979, 987 (8th Cir. 2013).

"Taken together, AEDPA and Strickland establish a 'doubly deferential standard' of review." Williams v. Roper, 695 F.3d 825, 831 (8th Cir. 2012) (quoting Cullen v. Pinholster, 563 U.S. 170, 202 (2011)).

> First, under Strickland, the state court must make a predictive judgment about the effect of the alleged deficiencies of counsel on the outcome of the trial, focusing on whether it is "reasonably likely" that the result would have been different absent the errors. Strickland, 466 U.S. at 696. . . . To satisfy Strickland, the likelihood of a different result must be "substantial, not just conceivable." Id. Under AEDPA, [federal courts] must then give substantial deference to the state court's predictive judgment. So long as the state court's decision was not "contrary to" clearly established law, the remaining question under the "unreasonable application" clause of § 2254(d) is whether the state court's determination under the Strickland standard is unreasonable, not merely whether it is incorrect. [Harrington v. Richter, 562 U.S. 86, 112, 101], 131 S. Ct. 770, 792, 785 (2011).

> This standard was meant to be difficult to meet, and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at [102].

Williams, 695 F.3d at 831–32. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 562 U.S. at 105. Furthermore, a state court's findings of fact made in the course of deciding a claim of ineffective assistance of counsel are presumed to be correct. Odem v. Hopkins, 382 F.3d 846, 849 (8th Cir. 2004).

## IV.    Discussion

Petitioner asserts five Grounds for relief: (1) the trial court erred in admitting the videotaped interview of Antonia Moore as evidence and in failing to allow information that would allow Petitioner to recall Ms. Moore to the stand; (2) the trial court erred in failing to suppress the line-up identification by Catherine Holbrook and Martha Finegar, identifying Petitioner as the shooter; (3) the trial court erred in denying a motion to dismiss on speedy trial grounds; (4) trial counsel was ineffective for failing to call two alibi witnesses (Petitioner's mother and a friend); and, (5) trial counsel was ineffective for failing to review evidence and discuss trial strategy prior to trial preventing Petitioner from considering testifying and accepting a plea deal.

As an initial matter, Petitioner repeats (verbatim, minus some argument and citation to case authority) the briefs that he submitted on direct appeal and on post-conviction review to the Missouri Court of Appeals (Docs. 11-3 and 11-20). As such, Petitioner makes no argument as to how the Missouri Court of Appeals erred in its analysis of any of the Grounds that he raises before this Court. That is, Petitioner has not shown how the latest state court to consider the merits of his claims either unreasonably applied constitutional law or unreasonably found the facts in light of the evidence. Federal habeas review is not a general review of a state criminal trial. Instead, this Court is "bound by the AEDPA to exercise only limited and deferential review of underlying state

court decisions." Lomhold v. Iowa, 327 F.3d 748, 751 (8th Cir. 2003). To acquire federal habeas corpus relief, then, Petitioner must demonstrate "that the challenged state-court ruling rested on an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Metrish v. Lancaster, 569 U.S. 351, 358 (2013) (quotation marks and citation omitted). Without such a showing, his claims must fail. For this reason alone, the Petition must be denied in its entirety.

Nonetheless, even if the merits of the claims are considered, Petitioner has not presented any argument that would warrant habeas relief.

Petitioner raised Grounds 1, 2, and 3 on direct appeal before the state courts. At trial, Ms. Moore gave conflicting testimony about whether Petitioner was the shooter (Doc. 11-5, p. 2). Ms. Moore's videotaped interview at the police station after the shooting was admitted to rebut her testimony, over Petitioner's objection (Id. 3). Petitioner then orally requested Ms. Moore's address, in order to recall her as a witness, but the trial court declined (Id.). In considering these claims, the Missouri Court of Appeals (MCA) found that the videotape was properly admitted as a prior inconsistent statement to rebut Ms. Moore's testimony that she was coerced to testify and that she was intoxicated at the police station (Id. 4-6). The MCA went on to hold, after a plain error review, that the trial court did not err in declining to furnish Ms. Moore's address to Petitioner.[1] The MCA found that Petitioner did not comply with state law in requesting the address and that fundamental unfairness did not result because Petitioner had ample notice about the video and opportunity to extensively examine Ms. Moore prior to her dismissal as a witness (Id. 8-9).

Generally, state evidentiary rulings do not provide a basis for federal habeas review. Estelle v. McGuire, 502 U.S. 62, 67 (1991). Therefore, in order for Petitioner to prevail on what

---

[1] This aspect of his claim may also be procedurally defaulted. Clark v. Bertsch, 780 F.3d 873, 876 (8th Cir. 2015) (finding that an unpreserved claim reviewed for plain error cannot excuse a procedural default).

are considered due process claims, see Osborne v. Purkett, 411 F.3d 911, 917 (8th Cir. 2005), he must show that the admitted evidence (or excluded evidence) resulted in a fundamentally unfair trial – that the admission was "so gross, conspicuously prejudicial, or otherwise of such magnitude that it fatally infect[ed] the trial." McCafferty v. Leapley, 944 F.2d 445, 452 (8th Cir 1991); Sittner v. Bowersox, 969 F.3d 846, 849-850 (8th Cir. 2020) (quotation marks and citation omitted). In order to make such a showing, Petitioner must show more than trial error or even plain error, he must show that the entire trial was rendered fundamentally unfair, that the verdict might have been different had the error not occurred. McCafferty, 944 F.2d at 452; Harris v. Bowersox, 184 F.3d 744, 752 (8th Cir. 1999). Petitioner makes no such showing.

When the MCA's factual findings are given deference, it is undisputed that Ms. Moore gave conflicting testimony – in particular, she testified both that Petitioner did and did not shoot Mr. Burgett. She also testified that she initially implicated Petitioner because she was coerced by the State. Finally, she indicated that she was intoxicated during her police interview. The videotape of her interview, as found by the state courts, rebutted her claims of intoxication and coercion. In addition, the videotape impeached her statement on cross-examination that Petitioner was not the shooter. Certainly, the videotape of Ms. Moore's police interview after the shooting represented significant evidence of Petitioner's guilt. However, it does not follow that the admission of the videotape, even if in error, was so grossly prejudicial as to fatally infect the trial such that its exclusion would have led to a contrary result. On direct examination, Ms. Moore testified that Petitioner shot Mr. Burgett – as such, the videotape interview did not represent any new evidence. Likewise, the videotape was appropriately used to impeach Ms. Moore's contrary testimony on cross-examination and to appropriately counter her additional statements that she was coerced and intoxicated during the police interview. And, recalling Ms. Moore would have

merely been cumulative of her previous testimony. There is no showing that even if Ms. Moore was recalled, she would have provided any new or probative evidence.

As to the two eyewitnesses and their line-up identification, Petitioner contends that the identification procedure used was impermissibly suggestive. Petitioner does not offer any argument as to how the identification procedure was suggestive except to claim that, notwithstanding Missouri state law, a three-person line-up is unreliable in a murder case. The MCA noted that the test for determining whether identification evidence is admissible is first whether the procedures used were impermissibly suggestive and then whether the suggestive procedures made the identification unreliable (Doc. 11-5, pp. 9-10). The Court went on to find that Petitioner's argument was foreclosed by State v. Green, 635 S.W.2d 42 (Mo. App. Ct. 1982) (finding that a three-man line-up, of different heights and with different clothing, is not objectionable and that "[i]t must be recognized that substantial differences may occur in the characteristics of the various subjects placed in a lineup"). This Court does not find error in either the MCA's analysis or conclusion.

The Due Process Clause is not offended by a bare claim of suggestive pretrial proceedings. Rather, Petitioner must show that the "pretrial identification procedures created a substantial likelihood of irreparable misidentification" instead of the "in-court identification [having] a reliable and independent basis." Cotton v. Armontrout, 784 F.2d 320, 322 (8th Cir. 1986) (citing Manson v. Brathwaite, 432 U.S. 98, 114, 116 (1977)). As such, Petitioner must show that the lineup was impermissibly suggestive and unreliable, the standard identified by the MCA. Briscoe v. County of St. Louis, Missouri, 690 F.3d 1004, 1012 (8th Cir. 2012) (citing United States v. Martinez, 462 F.3d 1050, 1055 (8th Cir. 2000)). Petitioner has made no showing that the lineups were impermissibly suggestive; instead, he only argues that three-person line-up is inherently

unreliable but cites to no case authority or other authority that would support such a contention. See United States v. Johnson, 75 F.4th 833 (8th Cir. 2023) (in dicta, noting that a three-person lineup was used to support a probable cause finding). Certainly, there is no case authority that would suggest that the nature of the crime charged should affect the constitutionality of a lineup procedure.

Petitioner's third Ground relates to his right to a speedy trial. The Sixth Amendment guarantees "the right to a speedy and public trial." The clock begins to run at the time a defendant is arrested or indicted and continues until trial. United States v. Marion, 404 U.S. 307, 325 (1971); United States v. Johnson, 990 F.3d 661, 670 (8th Cir. 2021). In addressing whether a Sixth Amendment right to a speedy trial is violated, courts must weigh four factors: "the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." United States v. Jackson, 446 F.3d 847, 849 (8th Cir. 2006). The MCA correctly identified this standard (Doc. 11-5, pp. 10-15). The MCA found that the length of delay, 22 months,[2] was presumptively prejudicial.[3] The MCA went on to find that: (1) a number of delays were due to the state but that some of the delays were attributable to witness availability (which is a valid reason for delay) and that none of the delays were an attempt to hamper the defense (which weighed less heavily against the state); (2) two delays (totaling 7 months) were due to the Petitioner (which weighed heavily against the Petitioner); (3) Petitioner meaningfully asserted his right to a speedy trial on three separate occasions; and, (4) there is no evidence of oppressive pretrial conditions and no evidence that the delay prejudiced Petitioner's defense.

---

[2] Petitioner was arrested on January 16, 2015 and tried on November 28, 2016.

[3] See United States v. Jeanetta, 533 F.3d 651, 656 (8th Cir. 2008) (stating that a delay approaching one-year may meet the threshold requirements of the seminal case Barker v. Wingo, 407 U.S. 514 (1972)). The Missouri Court of Appeals noted that a delay of 8 months is presumptively prejudicial in Missouri (Doc. 11-5, p. 11, citing State v. Sisco, 458 S.W.3d 304, 313 (Mo. 2015)).

As noted above, Petitioner has not demonstrated that the MCA erred in either applying the law or considering the facts in determining whether Petitioner's right to a speedy trial was violated. Even if the merits are considered, Petitioner has not demonstrated a violation of his Sixth Amendment rights. Petitioner argues that almost the entirety of the delay was due to the state's requests (Doc. 1, p. 27). While the state did request continuances (see, e.g., Doc. 11-2, pp. 68, 73, 74, and 84-85), Petitioner also requested and was granted a 5 month continuance from April, 2016 to September 2016 and then a 2 month continuance from September 2016 to November 2016 (Doc. 11-2, p. 89, 104, 109). As such, 7 months of delay was occasioned by Petitioner whereas 7 months of delay was attributable to the state. Petitioner makes no showing that the state intentionally delayed the case, United States v. Summage, 575 F.3d 864, 876 (8th Cir. 2009), or that the MCA erred in assigning limited weight to the delays occasioned by the state.

In addressing the final factor, prejudice, there are three considerations: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." Barker, 407 U.S. 514, 532 (1972). Petitioner argues that he was targeted with violence while in pretrial confinement. To support this contention, he refers to a motion filed by his attorney before the trial court (Doc. 11-2, pp. 75-76). The motion states that Petitioner was "placed within arm's reach" of the victim's mother. There is nothing in the motion that suggests that Petitioner was "targeted for violence" as stated in his brief or that he actually suffered any violence or anxiety (Doc. 1, p. 27). Accordingly, Petitioner has presented no evidence or authority that suggests that the MCA's consideration of this claim, finding that it is unsupported, is erroneous. Petitioner also claims that he was prejudiced because Ms. Moore was harassed and intimidated during the delay (Doc. 1, p. 28). The MCA found that Ms. Moore had been threatened by *Petitioner's* brother and that the victim's mother told her to

"do the right thing" (Doc. 11-5, p. 14). Petitioner does not challenge these findings. He further does not make any argument that the MCA erred in finding that his family threatening a witness is a "'self-invited injury'" (Doc. 11-5, p. 14-15, quoting State v. Bolden, 371 S.W.3d 802, 806 (Mo. 2012)).

In sum, Petitioner has made no suggestion that the MCA erred in "engag[ing] in the difficult and sensitive balancing process" in addressing Petitioner's speedy trial claim nor has he shown prejudice. Barker, 407 U.S. at 533; Taylor v. Roper, 561 F.3d 859, 863 (8th Cir. 2009) (noting that because the Barker standard is "general," the state courts have latitude to determine whether the defendant has met his burden).

For Grounds 4 and 5, Petitioner argues that his trial counsel was ineffective in failing to call alibi witnesses and in failing to review evidence and discuss trial strategy, which hampered his consideration of testifying at trial and/or taking a plea deal. Petitioner has not explained or discussed how the MCA either unreasonably applied the law or unreasonably determined the facts in light of the evidence. As such, Petitioner cannot satisfy the "doubly deferential" standard required to obtain habeas relief on Grounds 4 and 5. To the contrary, the MCA correctly identified the controlling legal standard for Petitioner's ineffective assistance of counsel claims. Burt v. Titlow, 571 U.S. 12, 22-23 (2013) (noting that the burden is on a petitioner to show that counsel's performance was deficient). And, after thoroughly reviewing the claims, the MCA found that Petitioner failed to demonstrate that counsel's performance was deficient and that he was prejudiced as a result.

As to the alibi witnesses, the MCA found that Petitioner did not show that these witnesses would have provided him a viable defense (Doc. 11-12, p. 4). In considering their value as witnesses, the MCA found that: the victim was shot between midnight and 1:00 a.m. on January

15, 2015; Petitioner's mother testified that he was home at 11:00 p.m. on January 14, 2015 but that he went out to buy cigarettes and that she did not know when he returned home; Petitioner's mother further testified that she showed a video of Petitioner returning home to his counsel but that she could not produce the video at the evidentiary hearing.  As to the other witness, Petitioner's friend, the MCA found that: he was staying at Petitioner's mother's home on January 14, 2015; he saw Petitioner all day on January 14, 2015 and that he saw him when he woke up from sleeping before work but that he did not remember whether he worked on January 15, 2015; he also testified in contradiction to Petitioner's mother that Petitioner did not leave the house at all from the evening of January 14 to the early morning hours of January 15.  The MCA also noted that Petitioner's attorney testified that Petitioner told her that he was on a Metro Transit bus at the time of the shooting but that she could not find corroborating evidence.  The MCA found that counsel did not act unreasonably in failing to call these two witnesses because Petitioner did not show that their testimony was beneficial and that he could not show prejudice because their testimony would not have "unqualifiedly" supported a viable defense.

For Ground 5, Petitioner argues that he may have testified at trial and/or taken a plea deal had counsel been more communicative about the evidence and strategy.  In considering the claim, the MCA found that Petitioner refused a plea offer during trial and again at the close of the state's evidence (Doc. 11-12, pp. 8-7).  As such, the MCA found that Petitioner failed to show that he was prejudiced by counsel's alleged non-performance.  The MCA further found that the evidentiary hearing on Petitioner's claims of ineffective assistance of counsel revealed that Petitioner stated to the trial court that he did not want to testify (Id. 7).  Finally, the MCA found that Petitioner was not prejudiced by any ineffectiveness because there was overwhelming evidence of his guilt.

As noted above, Petitioner must show that counsel's performance was so deficient that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance" and that "the deficient performance prejudiced the defense" Strickland, 466 U.S. at 690, 694.  Petitioner cannot show that the failure to call these witnesses was prejudicial: his mother could not testify as to whether he was home during the critical time period and his friend's testimony was vague at best.  See Hosier v. State, 593 S.W.3d 75, 88 (Mo. 2019) ("If a potential witness's testimony would not unqualifiedly support a defendant, the failure to call such a witness does not constitute ineffective assistance." (quotation marks and citation omitted)).  Counsel reasonably could have concluded that testimony from these witnesses would not provide a viable defense.  Flieger v. Delo, 16 F.3d 878, 886 (8th Cir. 1994) (finding, in part, that the failure to call alibi witnesses who would offer only vague or unhelpful testimony of the defendant's whereabouts during a crime was not ineffective).  The MCA's analysis of this claim is entitled to deference as there is no showing it unreasonably applied constitutional law or unreasonably found the facts in light of the evidence.

Similarly, Petitioner's claim that he would have testified or accepted a plea deal if he was aware of the state's evidence and counsel's strategy is equally unavailing.  At trial, Petitioner affirmatively indicated, under oath, that he understood his right to testify, spoke to his lawyer about the decision, and decided not to testify (Doc. 11-1, pp. 375-380).  He further indicated that his decision to not testify was part of a trial strategy (Id. p. 380).  As to a potential plea deal, Petitioner's counsel, with Petitioner present, indicated that she discussed the plea deal with Petitioner but that he rejected the offer (Id. 381-383).  Both decisions were made at the close of the state's case.  Accordingly, the MCA correctly found that Petitioner was aware of the evidence and counsel's trial strategy at the time he elected to reject the plea offer and decide not to testify.

Therefore, there is no showing that counsel's performance was deficient or that he was prejudiced as a result. Fink v. Lockhart, 823 F.2d 204 (8th Cir. 1987) ("The defendant has the burden of showing that he was prejudiced.").

* * * * *

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the petition of Arthur Bolton for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that no certificate of appealability will be issued because Petitioner has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 335-338 (2003) (setting forth the standard for issuing a certificate of appealability).

A separate Judgment will accompany this Memorandum and Order.

*/s/ John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 12th day of August, 2025.